UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| SILGAN CONTAINERS,<br><br>　　　　　Plaintiff,<br>　　v.<br>NATIONAL UNION FIRE INS., *et al.*,<br><br>　　　　　National Union. | No. C 09-05971 RS (LB)<br><br>**ORDER RE DISCOVERY DISPUTES RAISED IN NOVEMBER 29, 2010 JOINT LETTER**<br><br>**[ECF No. 67]** |

## I. INTRODUCTION

In this case, Plaintiff Silgan Containers claims that Defendant National Union Fire Insurance Company must insure Silgan for damages caused by defective cans that Silgan sold to Del Monte Corporation to can Del Monte's tomato products. *See* Amended Complaint, ECF No. 37 at 4, ¶¶ 26-28. The defective cans resulted in swelling, low vacuum pressure, corrosion failure, interior corrosion, and product discoloration. *Id.* at 3, ¶¶ 13, 18. Del Monte could not separate defective from non-defective cans and disposed of all cans and related canned products from two periods in 2005 and 2006. *Id.* at 3-4, ¶¶ 14, 22. As a result, Del Monte made a claim totaling approximately $5.4 million against Silgan. *Id.* at 4, ¶ 23. Silgan reported the Del Monte claim to its insurers, and its primary insurer Liberty Mutual Fire Insurance Company paid the full amount of its $1.5 million coverage. *Id.* at 4, ¶¶ 24, 27. The claims relevant to this discovery dispute are whether the remaining amount (roughly $3.9 million) and some additional costs are covered by certain National Union excess umbrella policies. *See id.*, ¶¶ 25-31. Silgan asserts that National Union's policies

1 cover the Del Monte claim and that National Union's failure to pay is improper and breaches its duty
2 of good faith and fair dealing. *See id.* at 4-5 ¶¶ 26, 29, 37-38. National Union responds that its
3 policies do not cover the defects here. Answer, ECF No. 42; Joint Letter, ECF No. 67, at 10.

4 The district court phased discovery, first providing for discovery and cross-motions for summary
5 judgment on whether National Union's umbrella policies cover the loss here. 5/24/910 Order, ECF
6 No. 39 at 1-2 (discovery limited to "policy interpretation and application issues" and "the nature and
7 origin" of Silgan's alleged damages). If the policies cover the loss, then the next phase of discovery
8 will focus on whether National Union acted in bad faith. *See id.*; Joint Letter, ECF No. 67 at 10.

## II. DISCOVERY DISPUTES

10 On November 29, 2010, Silgan and National Union filed a joint letter about the following
11 discovery disputes: (A) Silgan's notice of Rule 30(b)(6) depositions of one or more designated party
12 representatives of National Union and (B) Silgan's request to National Union to produce its
13 underwriting file and related claims-processing materials. *See* ECF No. 67. The parties appeared by
14 telephone on December 21, 2010. The Court rules as follows.

15 **A. Depositions**

16 Silgan seeks an order compelling National Union to produce one or more persons for depositions
17 on the following matters: (1) communications between National Union and Del Monte relating the
18 Del Monte tomato claim; (2) communications between Silgan and National Union relating to the Del
19 Monte tomato claim; (3) communications between National Union and Liberty Mutual relating to
20 the Del Monte tomato claim; (4) communications between and among National Union
21 representatives relating to the Del Monte tomato claim; (5) National Union's position on its
22 coverage for the Del Monte tomato claim; and (6) National Union's position on Liberty Mutual's
23 coverage for the Del Monte tomato claim. *See id.* at 1-2. At the hearing, Silgan withdrew its
24 deposition notice as to topic 2, agreeing that the record was sufficiently clear that no deposition was
25 needed.[1]

---

[1] In the joint discovery letter, National Union said that Silgan had not produced a witness on this topic, which was designated in National Union's notice of deposition. ECF No. 67 at 13. At the hearing, Silgan explained that it had notified National Union – apparently without objection –

C 09-05971 RS (LB)
ORDER RE DISCOVERY DISPUTES
2

**1. Silgan's position**

Silgan argues that the depositions cover areas relevant to whether National Union should indemnify Silgan for the Del Monte claim and have nothing to do with Silgan's claims against National Union for bad-faith denial of coverage. Silgan also observes that National Union previously served a deposition notice – and deposed four Silgan witnesses and four Del Monte witnesses – on topics that basically are the same six areas (numbered here with the numbers apparently in National Union's deposition notice): (1) communications between Silgan and Del Monte relating to the Del Monte tomato claim; (2) communications between Silgan and National Union relating to the Del Monte claim; (3) communications between Silgan and Liberty Mutual relating to the Del Monte tomato claim; (4) communications between and among Silgan's representatives relating to the Del Monte tomato claim; (19) damages allegedly sustained by Del Monte as a result of the cans and ends at issue in the Del Monte tomato claim, including each subpart or component of Del Monte's damages claimed; and (20) damages allegedly sustained by Silgan as a result of the cans and ends at issue in the Del Monte tomato claim, including each subpart or component of Silgan's damages claimed. *Id.* at 2-3. Silgan argues it should have the same opportunity to depose National Union's witnesses on the same topics. *Id.* at 3.

Silgan argues that the depositions – as opposed to the pleadings or answers to contention interrogatories – are needed to give Silgan meaningful information about coverage issues. For example, National Union's answer to the amended complaint gave only stock defenses and denials such as the fourth affirmative defense that "National Union had no obligation to indemnify . . . for the . . . Del Monte claim because the claim did not involve 'property damage' caused by an 'occurrence' as that term is defined in the . . . National Insurance umbrella policies." *Id.* National Union's answers to Silgan's contention interrogatories similarly provided only generalities and not specific facts to support National Union's position that its policies do not cover the Del Monte claim. *Id.* and Exhibit 2, ECF No. 67-1 at 16 (Del Monte claim does not involve "property damage," which would be physical injury to or loss of use of the tomato products; the tomatoes' diminished

---

that a deposition on the topic was unnecessary because the record was clear.

shelf life is not "property damage;" even if the Del Monte claim involved covered "property damage," the claim arises from multiple occurrences, which means that Liberty Mutual has a further primary insurance obligation, and Silgan is also responsible for additional amounts) and 17-19 (same).

Silgan argues that National Union's position in this discovery dispute also shows that the pleadings and answers to contention interrogatories are inadequate. National Union's claim representative's prior position was that the swelled cans in the Del Monte claim were an "occurrence" covered by the National Union policy (although National Union needed to resolve certain issues). *See* ECF No. 67 at 4 and Exh. 3, Declaration of Daniel M. Carson, ECF No. 67-1 at 26 (Silgan general counsel's conversation with a claims representative); Exh. 5, ECF No. 67-1 at 40 (follow-up email from claims representative clarifies that conversation was not meant to fully explain National Union's coverage position). Now National Union says that there is no coverage and (according to Silgan) for the first time in the joint discovery letter provides specific reasons: (1) Silgan's cans did not contaminate the tomato products and only a few cans out of the millions at issue caused "physical injury;" and (2) the Del Monte claim involves at least "three" occurrences and potentially implicates multiple years of Liberty Mutual's primary insurance. ECF No. 67 at 4-5.

Silgan concludes that it is entitled to know from a National Union representative "just what National Union is and is not claiming in its denial of coverage." *Id.* at 6.

**2. National Union's position**

National Union responds that this phase of discovery is about (1) policy interpretation and coverage and (2) the nature and origin of Silgan's damages. *Id.* at 10-11. The only facts relevant to those two issues (and National Union's insurance obligation to Silgan) are the "unambiguous language" of the policies and the facts of the Del Monte claim. *Id.* at 10. More specifically, the coverage issues here are about whether there was "property damage" caused by an "occurrence" and whether any exclusions limit or preclude coverage. *Id.* at 10-11 (arguing that generally there was no property damage). Even if there was property damage and thus coverage, then there are multiple "occurrences," not just the one occurrence that Liberty Mutual assumed. *Id.* at 11. Multiple occurrences would result in a different allocation of liability among all parties: Liberty Mutual

1 would be responsible for coverage for more than one "occurrence," and Silgan would be responsible
2 for additional costs. *Id.* But these issues – again – involve only what happened with the cans and
3 related tomato products (meaning, the facts about the Del Monte claim) and the plain language of
4 the policies. *Id.* By contrast, the depositions seek facts related to National Union's "claims
5 handling, communications, and positions," which are not relevant to the coverage issues about
6 whether the Del Monte claim involved a covered loss under National Union's policies. *Id.* The
7 depositions seek information that is relevant only to Silgan's bad faith claims, which are not an issue
8 yet given the phased discovery. *Id.* at 10, 12.

9 Moreover, National Union already provided its coverage position in reservations of rights letters,
10 the pleadings, the initial joint case management statement, and the "appropriate vehicle for exploring
11 legal positions – [its November 2010 responses to the] contention interrogatories." *Id.* at 10-11, 14.
12 National Union disputes that these materials are vague and require depositions. It also disputes that
13 its position in the discovery letter – that there was no "property damage" because the Silgan cans did
14 not contaminate the Del Monte tomato product and only a few cans out of millions experienced
15 "physical injury" – is any different than its answers to the contention interrogatories. *Cf.* Responses
16 to Interrogatories, ECF No. 67-1 at 16-19 (Del Monte claim does not involve "property damage,"
17 which would be physical injury to or loss of use of the tomato products; the tomatoes' diminished
18 shelf life is not "property damage;" even if the Del Monte claim involved covered "property
19 damage," the claim arises from multiple occurrences, which means that Liberty Mutual has a further
20 primary insurance obligation, and Silgan also is responsible for additional amounts).[2]

21 National Union also rejects Silgan's argument that Silgan is entitled to depose National Union on
22 the same topics in National Union's depositions of Silgan and Del Monte. *Id.* at 13. Depositions are
23 appropriate only if a party has relevant knowledge, and National Union's "second-hand knowledge
24 about communications relating to the facts shown in the Del Monte claim is not relevant and has no

25

26 [2] Parenthetically, National Union observes that Silgan also argued for the first time that the case involves "contamination issues." ECF No. 67 at 14. As this order's introduction demonstrates,
27 however, that shorthand is consistent with the amended complaint, which alleges that the defective cans resulted in swelling, low vacuum pressure, corrosion failure, interior corrosion, and product
28 discoloration. ECF No. 37 at 3, ¶¶ 13, 18.

C 09-05971 RS (LB)
ORDER RE DISCOVERY DISPUTES
5

benefit." *Id.* (the burden and expense of producing corporate representatives outweighs the potential benefit). Finally, topics 5 and 6 – National Union's positions on coverage for the Del Monte claim under the National Union and Liberty Mutual policies – are irrelevant, seek improper testimony from fact witnesses regarding legal positions, and were provided already in other vehicles including the contention interrogatories. *Id.* at 13-14.

National Union did not file or excerpt any of the relevant provisions of the excess umbrella policies at issue.

### 3. Ruling

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Relevant information need not be admissible at trial if it is reasonably calculated to lead to the discovery of admissible evidence. *Id.*; s*ee Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The court must limit discovery if it determines that it is cumulative or duplicative or can be obtained through more convenient, less burdensome, or less expensive means. *See* Fed. R. Civ. P. 26(b)(2)(C).

The main issue here is the parties' disputes about whether the Del Monte facts establish an "occurrence" (meaning, "property damage" or "accident") under the policies. Although the interpretation of an insurance policy is a legal question, *see Quan v. Truck Ins. Exchange*, 67 Cal. App. 4th 583, 602 (1998), an insured is entitled to explore what risks the insurer expects to cover in the policy. *See Pentair Water Treatment (OH) Co. v. Continental Ins. Co.*, No. C 08-3604, 2009 WL 3817600, at * 4 (S.D.N.Y. Nov. 16, 2009) (insurer denied coverage under excess umbrella policies for outbreak of Legionnaires' disease on cruise ship; in answer, insurer disputed coverage on ground that the facts did not constitute an "occurrence" or "accident" under the policy; granted depositions regarding underwriting practices that were relevant to the risks that the insurer expected to cover when it used terms similar to those in the policy). Similarly, while an insurer's *legal* opinion about coverage is not relevant, the facts it relies on to deny coverage under the policy's terms are relevant. *Quan*, 67 Cal. App. 4th at 602. Finally, as discussed below, Silgan has alleged that the policy terms are ambiguous, and National Union – other than a bald assertion that the policy is not ambiguous (with citations to cases) – has provided no information that the terms are

unambiguous.

The bottom line here is that Silgan seeks the facts, not legal opinion, that National Union relies on to deny coverage. Communications between National Union and Del Monte (topic one), Silgan (topic two), and Liberty Mutual (topic three), and among National Union representatives (topic four) are relevant to the proper construction and application of the policy terms in question. Topics five and six regarding the *facts* (but not legal opinions) that National Union relies on to deny coverage also are relevant.

Looking at the pleadings and responses to contention interrogatories here, they are somewhat contradictory and vague and do not sufficiently clarify National Union's position on coverage, meaning, the specific facts that it relies on to find that (1) there was no "occurrence" under the policies, and (2), even assuming coverage, there were multiple occurrences that ought to result in more liability for Liberty Mutual and Silgan. Also, National Union deposed Silgan and Liberty Mutual on substantially similar topics, and Liberty Mutual apparently reached a different conclusion on whether there was one occurrence or multiple occurrences. The court thus sees no reason to limit depositions on the ground that they are cumulative or duplicative or can be obtained through more convenient, less burdensome, or less expensive means. *See* Fed. R. Civ. P. 26(b)(2)(C); *UniRAM Technology, Inc. v. Monolithic System Technology, Inc.*, No. C 04-1268, 2007 WL 915225, at *3 (N.D. Cal. March 23, 2007) (approving Rule 30(b)(6) depositions where the other party had already conducted depositions on its own contention topics).

Also, this case is straightforward and does not involve the kinds of complex facts in cases where responses to contention interrogatories are the appropriate vehicle for exploring legal positions. *See* ECF No. 67 at 10-11, 14 (collecting cases). The main case National Union cites is *McCormick-Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D. 275 (N.D. Cal.), *overruled on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991). In *McCormick-Morgan*, the court held that in a complex patent case, considerations of fairness, efficiency, and common sense required that contentions be answered through interrogatories because a non-lawyer deponent could not be expected to give a reliable and complete account of all the bases for the contentions made and positions taken by the corporate party. *Id.* at 286-87. Instead, patent lawyers are best equipped to give such answers after most

other discovery is completed. *Id.* at 287. But the result can be different in cases where there is not "a conceptually dense dynamic between physical objects, words in [patent] claims, and principles of law." *Id.; see UniRAM Techn.*, 2007 WL 915225 at *3 (making this point); *U.S. Equal Empl. Oppor. Comm'n v. Caesars Entertainment, Inc.*, 237 F.R.D. 428, 435 (D. Nev. 2006) (distinguishing *McCormick-Morgan* and allowing deposition to uncover facts supporting affirmative defenses). Here, again, Silgan seeks facts, not legal conclusions, and National Union conducted similar depositions on similar topics. *See UniRAM Techn.*, 2007 WL 915225 at *3 (allowing deposition on contention topics when opposing party had already done so).

In sum, the court orders the depositions subject to the rules set forth in the district court's May 24, 2010 order about phased discovery, meaning, discovery is limited to "policy interpretation and application issues" and "the nature and origin" of Silgan's damages. There shall be no discovery about Silgan's claims of bad faith claims. *See* ECF No. 39 at 1-2.

**B. Requests for Production: Underwriting File and Related Claims-Processing Materials**

Silgan's requests and National Union's responses are as follows:

**REQUEST FOR PRODUCTION NO. 3:**

National Union's insurance underwriting file for Silgan.

**RESPONSE:**

National Union objects to this Request as overly broad, unduly burdensome, unlimited in time, vague and ambiguous. National Union also objects to this Request to the extent it seeks, or can be construed to seek, information or documents subject to the attorney-client privilege or the work product doctrine. National Union further objects to this Request to the extent it seeks, or can be construed to seek, information or documents which constitute or contain confidential or proprietary information. National Union also objects to this Request to the extent it seeks information regarding reinsurance and/or reserves, which is irrelevant, immaterial and/or not reasonably calculated to lead to the discovery of admissible evidence and/or reflects the impressions, conclusions, opinions, legal research or theories of National Union or its attorneys.

National Union also objects to this Request to the extent it seeks, or can be construed to seek, information or documents that are irrelevant, immaterial and/or not reasonably calculated to lead to the discovery of admissible evidence. In particular, information or documents related to the underwriting or issuance of the National Union umbrella policies are not relevant to this declaratory judgment action insofar as the terms, conditions, definitions and exclusions in the National Union umbrella policies are plain and unambiguous and speak for themselves.

Based on these Objections, National Union will not produce anything in response to this Request.

**REQUEST FOR PRODUCTION NO. 4:**

National Union's handbook or manual that describes how claims are supposed to be handled.

**RESPONSE:**

National Union objects to this Request as vague, ambiguous and undefined. In particular, the terms "handbook," "manual" and "how claims are supposed to be handled" are vague and ambiguous. National Union also object to this Request as overly broad, unduly burdensome, unlimited in time and unlimited in type of policy. National Union further objects to this Request to the extent it seeks; or can be construed to seek, information or documents which constitute or contain confidential or proprietary information. National Union further objects to this Request to the extent it seeks information regarding reinsurance and/or reserves, which is irrelevant, immaterial and/or not reasonably calculated to lead to the discovery of admissible evidence and/or reflects the impressions, conclusions, opinions, legal research or theories of National Union or its attorneys.

National Union also objects to this Request to the extent it seeks, or can be construed to seek, information or document that are irrelevant, immaterial and/or not reasonably calculated to lead to the discovery of admissible evidence. In particular, the information or documents sought in this Request, to the extent they exist, are not relevant to this declaratory judgment action insofar as the terms, conditions, definitions and exclusions in the National Union umbrella policies are plain and unambiguous and speak for themselves.

Based on these Objections, National Union will not produce anything in response to this Request.

Joint Letter, ECF No. 67 at 6-8.

**1. Silgan's position**

Silgan contends that an insured is entitled to the underwriting file when the insurer – here National Union – denies that there has been an "occurrence" under the insurance policy. *Id.* at 8 (collecting cases). Allowing Silgan to review the underwriting file makes sense when the policy terms are ambiguous, particularly when the primary insurer Liberty Mutual paid the full amount of its $1.5 million in coverage. *Id.* at 9. As examples of the ambiguity of policy terms, Silgan points to the term "occurrence," which in the policies means "Property damage, an accident, including continuous or repeated exposure to conditions, which results in . . . Property damage." Silgan asserts that "occurrence" is not clear, and "accident" is not defined at all, and "in other cases, National Union has taken diametrically opposed positions on what constitutes an 'occurrence.'" *Id.* at 9 (*citing Nat'l Union Fire Ins. Co. v. Puget Plastics*, 649 F. Supp. 2d 613, 627-29 (S.D. Texas 2009 (rejecting National Union's argument that multiple occurrences arose out of a single manufacturing process involving plastic water chambers in water heaters) and *Nat'l Union Fire Ins.*

1  *Co. v. Stroh Cos., Inc.*, 265 F.3d 97, 116-173 (5th Cir. 2001) (National Union initially contended
2  that each contaminated bottle of Arizona Ice Tea was a separate "loss" subject to a separate
3  deductible; appeals court upheld district court's determination that the glass shards in the bottles
4  were attributable to the single cause of a production line flaw).

5  At the hearing, Silgan confirmed that while the entire claims file may be relevant to its bad-faith
6  claims, at this stage, it seeks only the claims file and manual/guidelines relevant to the interpretation
7  of the contract terms and how they were applied.

**2. National Union's position**

9  National Union responds that California and other courts have defined the term "occurrence" as
10 unambiguous, and that as a result, the underwriting files are "extrinsic evidence and are not relevant
11 to whether there is coverage for the Del Monte tomato claim." *Id.* at 16-17 (collecting cases). It did
12 not excerpt or provide the policy language, arguing in its discovery letter and at the hearing only that
13 as a matter of law, the legal meaning of the policy terms cannot be disputed. Similarly, National
14 Union argues that the claims-handling manual/handbook also is extrinsic evidence that cannot be
15 used to prove that a clear policy term is ambiguous. *Id.* at 17-18. It also asserts that it has no
16 manual addressing insurance policy interpretion, which is the only relevant topic in this phase of
17 discovery. *Id.* at 18.

**3. Ruling**

19 The court orders National Union to produce its underwriting file and related claims-processing
20 materials for the Del Monte tomato claim only on the issue of the interpretation of the disputed
21 insurance policy terms.

22 The underwriting file is relevant to determining the risks that National Union expected to cover
23 in the policy, how it interpreted the various policy terms, and whether the terms of the policy are
24 ambiguous in the first instance. *See Pentair Water Treatment (OH) Co.*, 2009 WL 3817600 at * 4
25 (granting 30(b)(6) depositions regarding underwriting practices and procedures because they were
26 relevant to determine the terms of the policy); *Lexington Ins. Co.*, 1999 WL 33292943 at *4-*6
27 (ordering the production of all nonprivileged documents from its underwriting files). Claims
28 manuals also are relevant. Insurers are required to maintain guidelines for the prompt processing of

1 claims. *See* Cal. Ins. Code § 790.03(h)(3). Those guidelines are often in claims manuals that
2 provide criteria for processing claims, and the manuals are relevant for coverage claims (not just
3 bad-faith claims). *See Glenfed Develop. Corp. v. Sup. Ct. (Nat'l Union Fire Ins. Co)*, 53 Cal. App.
4 4th 1113, 1118 (1997). A claims manual can show how the insurer applied the standard language in
5 the claim. *See id.* It also can be relevant to establish that an ambiguity exists in the policy. *Andover*
6 *Newton Theological School, Inc. v. Continental Cas. Co.*, 930 F.2d 89, 94 n.5 (1st Cir. 1991). It also
7 can help identify persons involved in handling the claim. *See Glenfed*, 53 Cal. App. 4th at 1118.
8     National Union's argument – that extrinsic evidence of the unambiguous insurance contract
9 language is not admissible – does not change this result.
10     The mutual intent of the parties at the time of contract formation governs the meaning of a
11 contract. *See Lexington Ins. Co.*, 1999 WL 33292943 at * 4 (citation omitted). If it is possible, the
12 court should ascertain the parties' intent from the insurance contract itself. *See id.* (citing Cal. Civ.
13 Code § 1639). Extrinsic evidence is admissible to establish the intent of the parties if a term is
14 ambiguous and to prove that a term is, in fact, ambiguous. *See id.* (*citing Pacific Gas & Elec. Co. v.*
15 *G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39-40 (1968)) and *Morey v. Vannucci*, 64 Cal.
16 App. 4th 904, 912 (1998); *see Pacific Gas & Electric*, 69 Cal. 2d at 40 & n. 8 (reversible error for
17 trial court to refuse to consider such extrinsic evidence based on trial court's own conclusion that
18 contract's language is clear and unambiguous; even if contract is unambiguous on its face, a latent
19 ambiguity may be exposed by extrinsic evidence that reveals more than one possible meaning);
20 *Morey*, 64 Cal. App. 4th at 912 (if parties dispute the meaning of contract terms, "the trial court must
21 provisionally receive any proffered extrinsic evidence which is relevant to show whether the
22 contract is reasonably susceptible of a particular meaning") (*citing Pacific Gas & Electric*, 69 Cal.
23 2d at 39- 40).
24     Here, Silgan's excerpt and characterization of the policy language suggests that the policy
25 language is not clear, *see* ECF No. 67 at 9, and certainly "accident" is not defined. *See National*
26 *Union Ins. Co.*, 649 F. Supp. 2d at 629-30 (because policy does not define the word "accident," the
27 Fifth Circuit interprets it in accordance with its generally-accepted meaning). Moreover, National
28 Union cites only California cases addressing coverage as a matter of law – and not the policies

C 09-05971 RS (LB)
ORDER RE DISCOVERY DISPUTES
11

themselves – in support of its argument that the discovery seeks only inadmissible extrinsic evidence about unambiguous policy language.

But whether or not the contract is ambiguous is not the inquiry at the discovery stage. National Union may be right that extrinsic evidence would be inadmissible at trial, but that is not the standard that the court uses to evaluate relevancy for discovery. *See Nestle Foods Corp. v. Aetna Casualty and Surety Co.*, 135 F.R.D. 101, 104-05 (D. N.J. 1990). There has been no ruling on, nor should this court determine, whether the terms are ambiguous. *See id.* at 105 (making this point). Indeed, that issue is for the district court (presumably at summary judgment), not this court at the discovery stage. *See id.* (allowing discovery regarding drafting history of policy language over the insurance company's objection that there had been no ruling that the policy language was ambiguous); *Pacific Gas & Electric*, 69 Cal. 2d at 40 & n. 8 (reversible error for trial court to refuse to consider such extrinsic evidence based on trial court's own conclusion that contract's language is clear and unambiguous).

In sum, the court cannot find based on the information provided that the policy terms are unambiguous (and it should not at this discovery stage). Based on the parties' submissions, the information sought is relevant to coverage and/or reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). The court orders disclosure of Silgan's underwriting file and any claims manuals and guidelines or materials connected to the file that are relevant to the interpretation of the contract terms and how they were applied.

At the hearing, National Union said that it had no policy manual, guidelines, or materials relevant to the interpretation of the insurance terms and how they were applied. If this is true, then its response to the document request can reflect that position.

**IT IS SO ORDERED.**

Dated: December 21, 2010

LAUREL BEELER
United States Magistrate Judge

C 09-05971 RS (LB)
ORDER RE DISCOVERY DISPUTES

12