# UNITED STATES DISTRICT COURT

## Northern District of California

### Oakland Division

| | |
|---|---|
| SILGAN CONTAINERS,<br><br>　　　　Plaintiff,<br>　v.<br>NATIONAL UNION FIRE INS., *et al.*,<br><br>　　　　Defendants.<br>_____/ | No. C 09-05971 RS (LB)<br><br>**ORDER RE DISCOVERY DISPUTES RAISED IN JANUARY 11, 2011 JOINT LETTER**<br><br>**[ECF No. 76]** |

## I. INTRODUCTION

In this case, Plaintiff Silgan Containers claims that Defendant National Union Fire Insurance Company must insure Silgan for damages caused by defective cans that Silgan sold to Del Monte Corporation to can Del Monte's tomato products. *See* Amended Complaint, ECF No. 37 at 4, ¶¶ 26-28. Del Monte made a claim for $5.4 million against Silgan, and Silgan reported the claims to its insurers. *See id.* at 3, ¶¶ 23-24. Silgan's primary insurer Liberty Mutual paid the full amount of its $1.5 million coverage. *See id.* ¶ 27. The case is about whether the remaining amount (roughly $3.9 million) and some additional costs are covered by the excess umbrella policies. *Id.*, ¶¶ 25-31. The district court phased discovery: phase one (the current phase) addresses whether National Union's umbrella policies cover the loss, and phase two will address whether National Union acted in bad faith. 5/24/10 Order, ECF No. 39 at 1-2. The district court referred discovery disputes to this court.

## II. PENDING DISCOVERY DISPUTES

On January 11, 2011, Silgan and National Union filed a joint letter about the following discovery

disputes: (A) the sufficiency of National Union's December 21, 2010 expert disclosures – which were made under the new rule that is effective December 1, 2010 – as contrasted with Silgan's November 23, 2010 expert disclosures under the old rule; (B) discovery sought by Silgan about the manner in which National Union and its counsel attempted to withhold their communications with their experts; and (C) additional information about the expert sought by Silgan on January 6, 2010. ECF No. 76 at 1-2. The court held a telephonic hearing on February 3, 2011, and rules as follows.[1]

## A. Expert Disclosures and Which Version of Rule 26 Applies

In their initial case management conference statement, the parties contemplated that they would exchange their initial expert disclosures simultaneously. ECF No. 35 at 10. The district court's order phased disclosure, however. The first CMC order directed Silgan's disclosures on August 25, 2010 and National Union's disclosures on September 22, 2010. 5/20/10 Order, ECF No. 39 at 2. After Silgan added Liberty Mutual as a defendant, the district court modified the deadlines and ordered Silgan's disclosures by November 23, 2010 and National Union's disclosures by December 21, 2010 "in accordance with Federal Rule of Civil Procedure 26(a)(2)." 7/19/10 Order, ECF No. 53 at 1-2. Silgan made its expert disclosures on November 23, 2010 under old Rule 26. Joint Letter, ECF No. 76 at 4. National Union made its disclosures on December 21, 2010 and did not provide withheld communications identified on a previously-disclosed privilege log on the ground that the disclosures were not required under the new rule, which was effective December 1, 2010. *Id.*

The issue here is whether to apply the expert disclosure requirements of old Rule 26(a)(2) or new Rule 26(a)(2) to National Union's disclosures. Federal Rule of Civil Procedure 26 was amended effective December 1, 2010 to protect draft expert materials and some attorney-expert communications from discovery. Fed. R. Civ. P. 26(b)(4)(B)-(C). The new rule applies to "all proceedings" pending on December 1, 2010 insofar as it is "just and practicable." Order of Apr. 28, 2010 (transmitting to Congress the 2010 proposed rule amendments); *see Chevron Corp. v. Shefftz*, No. MC 10-10352 JLT, 2010 WL 4985663, at *5 (D. Mass. Dec. 7, 2010) (outlining rule changes).

The 2010 amended Rule 26(a)(2)(B)(ii) now requires disclosure of "the facts or data"

---

[1] For the reasons in the discovery letter, *see* ECF No. 76 at 1-2, 14 n. 2, the court excuses the parties' compliance with the in-person meet-and-confer requirement for this dispute only.

ORDER RE DISCOVERY DISPUTES (C 09-05971 RS (LB))
2

considered by the expert in forming an opinion as opposed to the broader "facts or other information" required under the old rule:

**Old Rule 26(a)(2)(B)**: . . . The report must contain:

   (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
   (ii) the data or other information considered by the witness in forming them[.]

**New Rule 26(a)(2)(B)**: . . . The report must contain:

   (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
   (ii) the facts or data considered by the witness in forming them[.]

Rule 26(b)(4) also was amended to include two new sections (B) and (C). Those sections protect draft reports and work-product communications between the attorney and expert (except communications regarding (1) the expert's compensation, (2) facts or data provided by the attorney and considered by the expert in forming his opinions, and (3) assumptions provided by the attorney and relied on by the expert in forming his opinions). Fed. R. Civ. P. 26(b)(4)(B)-(C). That means that the revised Rule 26(a)(2)(B)(ii) excludes theories or mental impressions of counsel.[2]

Old Rule 26(a)(4)(B)(ii), by contrast, provided for broad disclosures of communications with experts, even if they might otherwise be protected by the work-product rule. *See, e.g.*, *Securities & Exch. Comm'n v. Reyes*, No. C 06-04435 CRB, 2007 WL 963422, at *1 & n. 1 (N.D. Cal. Mar. 30, 2007) (applying majority rule and holding that under old rule 26(a)(2)(B), discovery rules generally require materials reviewed by experts or generated by them to be disclosed, regardless of whether the experts actually rely on those materials as a basis for their opinions, and regardless of whether they might otherwise be protected by the work-product privilege) (collecting cases); *South Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 257 F.R.D. 607, 612 (E.D.Cal. 2009) (same; numerous district courts in Ninth Circuit have reached the same conclusion as have majority of courts outside the Ninth Circuit, including every court of appeals to consider the issue) (collecting

---

[2] But even with the revision, the phrase "facts or data" is "interpreted broadly to require disclosure of any material considered by the expert from whatever source that contains factual ingredients. The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." Adv. Comm. Note to Fed. R. Civ. P. 26; *see Chevron Corp.*, 2010 WL 4985663 at *5.

ORDER RE DISCOVERY DISPUTES (C 09-05971 RS (LB))
3

cases).

When it made its disclosures under the new rule, National Union did not include its communications with its expert, Kenneth Neumann. The record shows the existence of those communications. On May 20, 2010, National Union produced a privilege log that showed withheld communications between counsel and Neumann. 1/11/11 Joint Letter, ECF Nos. 76 at 3 and 76-1 at 3. The record also shows that in June and July 2010, the parties contemplated that if National Union used Neumann as an expert, it would disclose the withheld communications. Specifically, Silgan asked about the withheld communications in June 2010 and stated its assumption that National Union would not use Neumann as an expert. ECF No. 76-2 at 4. National Union responded on July 6, 2010 that it had not decided on its experts yet, that it would make its expert disclosures consistent with the district court's scheduling orders and Federal Rule of Civil Procedure 26(a)(2)(B), and that if its expert were Neumann, it would produce the "currently-withheld communications with Mr. Neumann consistent with the requirements of Fed. R. Civ. P. 26(a)(2)(B)." ECF No. 76-3 at 8.

The issue here is whether the new rule – which applies to proceedings pending on its effective date of December 1, 2010 if "just and practicable" – ought to be applied here. *See* Order of Apr. 28, 2010 (transmitting proposed amended rule to Congress). Under 28 U.S.C. § 2074, "[t]he Supreme Court may fix the extent [a new] . . . rule shall apply to proceedings then pending, except that the Supreme Court shall not require the application of such rule to further proceedings then pending to the extent that, in the opinion of the court in which such proceedings are pending, the application of such rule in such proceeding would not be feasible or would work injustice, in which event the former rule applies." Similarly, under Federal Rule of Civil Procedure 86(a)(2)(B), rule amendments do not apply in pending proceedings if "the court determines that applying them in a particular action would be infeasible or work an injustice."

The court rules that National Union should make its disclosures under old Rule 26(a)(2)(B). It was hard to tell from the parties' submissions and argument what extra information Silgan disclosed. National Union argued that Silgan hewed carefully to supplying its expert only with fact discovery already produced and that tactical decision was fine but meant it really was operating under the equivalent of the new rule. Silgan responded (essentially) that National Union is the one being

tactical about discovery generally and that it has been liberal about disclosures and identifying what its expert relied on. The court does not have the expert report to evaluate it (and would decline to do so anyway). What is at issue here is a judgment call about whether to apply the same rule or whether to switch to the new one. On balance, the court concludes that applying two different expert disclosure rules in a pending case would not be feasible or just here. *See* 29 U.S.C. § 2074; Fed. R. Civ. P. 86(2)(B). The parties in their joint CMC statement contemplated joint disclosures, which means they expected the same rules would apply to the parties. Also, until Liberty Mutual was added as a defendant, all disclosures would have been made before December 1, 2010. Indeed, Silgan acknowledged on July 6, 2010 that if Neumann were its expert, it would disclose withheld communications under Rule 26(a)(2)(B). *See* ECF No. 76-3 at 8. The issue about a post-December disclosure deadline became apparent only on July 19, 2010, when – after Liberty Mutual was added – the district court modified the expert disclosure deadlines to November 23, 2010 for Silgan and December 23, 2010 for National Union. ECF No. 53 at 1-2. The court will not apply unequal rules to the parties especially when – as here – the course of conduct suggests only that the parties contemplated disclosure under the old rule. A different ruling would result in changing "the applicable rules mid-course." *Chevron*, 2010 WL 4985663 at *6 (applying amended rule to prospective discovery did not result in changing the rules mid-course).

National Union nonetheless argues that application of new Rule 26(a)(2)(B)(ii) would not cause an injustice because (1) it never asked for Silgan's communications with its expert under old Rule 26, (2) its July 2010 statement that it would disclose withheld communications under Rule 26(a)(2)(B) meant under the rule at the time of the disclosures, and (3) everyone knew about the rule change, which was adopted by the Supreme Court on April 28, 2010. ECF No. 76 at 14-16. The court rejects those arguments. *First*, Silgan was required to make its disclosures under the old rule, regardless of what National Union asked for. *Second*, the district court changed National Union's expert disclosure dates to December 21, 2010 only on July 19, 2010, which is after July 6, 2010, the date National Union said that it would disclose withheld communications if it used Neumann as an expert. *See* 7/19/10 Order, ECF No. 53 at 1-2; 7/6/10 Letter, ECF No. 76-3 at 8. *Third*, if National Union intended to operate under the new rules, it should have said so explicitly, particularly because

in its July 6 letter, it said that if it used Neumann as an expert, then it would "produce those currently-withheld communications with Mr. Neumann consistent with the requirements of Fed. R. Civ. P. 26(a)(2)(B)." In the context of the then-existing discovery deadlines, National Union's July 6 statements suggest disclosure would be made, which in turn presupposes that the parties assumed that old Rule 26 applied, which it did at that time. Later, National Union stayed silent about the potential application of the new rule until it made its December 21, 2010 disclosures, well after Silgan's November 2010 disclosures under the old rule. This time line suggests the possibility that National Union figured that it could get the benefit of the new rule without relinquishing information provided by Silgan under the old rule. The court appreciates National Union's statements that it did not do this, that it did not operate tactically, and that it asks only for what should happen with a rule change absent an injustice. At the same time, the course of conduct suggests an understanding by the parties.

Given that course of conduct and what it shows about the parties' expectations, if National Union wanted to operate under the new rules, it could have (and should have) raised the issue with Silgan before Siglan's November 2010 expert disclosures so that everyone could have operated under the same rules and the same playing field. Instead, National Union stayed silent. Under these circumstances, both parties should operate under the disclosure requirements of old Rule 26(a)(2)(B).

National Union also argues that Silgan is not entitled to communications with Neumann when he was a consulting expert and that are not part of the basis for his expert opinions. ECF No. 76 at 16. To the extent that materials were generated or considered "uniquely in the expert's role as a consultant," National Union may still assert a privilege over such materials. *See Reyes*, 2007 WL 963422 at *1. Silgan asserts that making this argument will be difficult given that the issues in this case involve only whether the umbrella policies cover the loss. ECF No. 76 at 9. On this record, the court cannot evaluate whether the expert could have donned a "privileged" hat for consulting expert services. Similarly, the court cannot evaluate the adequacy of National Union's disclosures before National Union makes them but trusts that National Union will comply with Rule 26(a)(2)(B)'s requirements.

**B. Discovery Regarding National Union's Attempts To Withhold Expert Discovery**

Silgan also asks the court to require National Union to produce "all documents that relate to its tactic of first stating that, if Mr. Neumann were designated as an expert, it would produce 'those currently-withheld communications with Mr. Neumann consistent with the requirements of Fed. R. Civ. P. 26(a)(2)(B)' and then its post-December 1, 2010 refusal to do so." ECF No. 76 at 9-10. National Union responds that Silgan seeks protected work product that is not discoverable. *See id.* at 21-22.

Silgan does not provide any reason why this information is relevant to a claim or defense or is anything but tactics and work product, and it has not shown a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *See* Fed. R. Civ. P. 26(b)(1) & (3); *Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *United States v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002). The court has already ordered what Silgan is entitled to, and that is disclosure under the old Rule 26(a)(2)(B)(ii).

**C. Discovery Relating To National Union's Expert Witness And His Firm's Prior History**

Silgan requested discovery about expert Kenneth Neumann's work with National Union, including retainer agreements and certain information provided in other cases. ECF No. 76 at 2. Silgan first made its request in a January 6, 2011 request to National Union. *See* ECF No. 76-9 at 1-2. The parties concede that they have not met and conferred about their dispute as required by this court's procedures for discovery disputes and by Civil Local Rule 37-1(a). The court denies the request without prejudice to the parties' complying with those discovery procedures.

The court observes that the discovery rules require certain disclosures and that it does not expect the parties to dispute uncontroversial discovery obligations. The point of the court's meet-and-confer process is so that lead counsel can confer directly and avoid unnecessary and costly disputes.

### III. PROCEDURES GOING FORWARD

Going forward, the parties are limited to five pages total per disputed issue, which is roughly the amount that the parties used per issue on the merits of their disputes (as opposed to the excess pages involving their remarks about each other) in their 24-page single-spaced January 11, 2011 letter. The parties should set forth each issue separately and address both positions in that separate section

1  (as opposed to using their previous process that involved separate statements).  The court's process
2  allows a side-by-side analysis of the parties' positions.  The process also requires the parties to
3  confer about and set forth uncontested facts jointly and focus their separate arguments about what is
4  contested (and eliminate what is not or what is inconsequential).  That means the page limits should
5  pose no barrier to a full discussion of the issues, especially given page limits for briefs and the fact
6  that letters are single-spaced.  A copy of the court's standing order with its procedures for discovery
7  disputes is attached.

8  Finally, the parties should include pin cites in cases that they cite.

9  This disposes of ECF No. 76.

10  **IT IS SO ORDERED.**

11  Dated: February 7, 2011

12  _____
    LAUREL BEELER
    United States Magistrate Judge