1
2
3
4
5
6
7

UNITED STATES  DISTRICT COURT

Northern District of California

Oakland Division

SILGAN CONTAINERS,                              No. C 09-05971 RS (LB)

                   Plaintiff,          **ORDER REGARDING THE PARTIES'**
   v.                                               **FEBRUARY 25, 2011 JOINT**
                              **DISCOVERY LETTER**

NATIONAL UNION FIRE INS., *et al.*,

                 Defendants.

_____/

## I.  INTRODUCTION

In this case, Plaintiff Silgan Containers claims that Defendant National Union Fire Insurance Company must insure Silgan for damages caused by defective cans that Silgan sold to Del Monte Corporation to can Del Monte's tomato products.  *See* Amended Complaint, ECF No. 37 at 4, ¶¶ 26-28.[1]  Del Monte made a claim for $5.4 million against Silgan, and Silgan reported the claims to its insurers.  *See id.* at 3, ¶¶ 23-24.  Silgan's primary insurer Liberty Mutual paid the full amount of its $1.5 million coverage.  *See id.* ¶ 27.  The case is about whether the remaining amount (roughly $3.9 million) and some additional costs are covered by the excess umbrella policies.  *Id.*, ¶¶ 25-31.  The district court phased discovery: phase one (the current phase) addresses whether National Union's umbrella policies cover the loss, and phase two will address whether National Union acted in bad

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    faith.  5/24/10 Order, ECF No. 39 at 1-2.   The district court referred discovery disputes to this court.

2                            **II. PENDING DISCOVERY DISPUTES**

3           On February 25, 2011, the parties filed a 30-page single-spaced joint discovery letter (with 150

4    pages of exhibits) about the following discovery disputes: (A) whether pursuant to this court's

5    December 21, 2010 order, National Union had to produce all underwriting files for policies issued to

6    Silgan; (B) whether National Union can withhold documents from the underwriting files that it

7    claims are subject to privilege; (C) whether the court should require National Union to produce

8    documents showing the compensation that its expert, Kenneth Neumann and his firm, RGL

9    Forensics, have received from defense counsel's firm over a five-year period; (D) whether Silgan's

10   January 10, 2011 notice of non-retained expert testimony that it amended on February 7 and

11   February 18, 2011 should be stricken as untimely and insufficient, and if not, whether the court

12   should permit National Union to depose those witnesses more, even though they were deposed on

13   the topics identified in the disclosures.  2/25/11 Joint Letter, ECF No. 82.  The court will address

14   each issue in turn.

15   **A.  <u>Production of Underwriting Files</u>**

16          The court previously ruled that the underwriting files were relevant and discoverable:

17          The underwriting file is relevant to determining the risks that National Union expected to cover
            in the policy, how it interpreted the various policy terms, and whether the terms of the policy are
18          ambiguous in the first instance.  *See Pentair Water Treatment (OH) Co.*, 2009 WL 3817600 at *
            4 (granting 30(b)(6) depositions regarding underwriting practices and procedures because they
19          were relevant to determine the terms of the policy); *Lexington Ins. Co.*, 1999 WL 33292943 at
            *4-*6 (ordering the production of all nonprivileged documents from its underwriting files).

20

21   12/21/10 Order, ECF No. 70 at 10-12.

22          Now National Union is arguing that it should not have to produce all the files, which go back to

23   1992.  Joint Letter, ECF No. No 82 at 1-2, 4-7.  It already produced the underwriting files for the

24   three policies at issue (with a privilege log for withheld or redacted documents).  *Id.* at 5.  It asserts

25   that the claims here involve the manufacture and sale of products after November 1, 2004 and before

26   November 1, 2007, and that the other files (for policies other than the three that span these dates) are

27   not relevant to the interpretation of contract terms in the three relevant policies.  *Id.*  Producing all

28   the files is burdensome because each policy has a separate file, and the underwriting files for the

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

relevant policies contain any relevant information considered by National Union. *Id.* at 6-7. To the extent that the court orders disclosure of the underwriting files, National Union asks for a protective order to prevent use of the files in other litigation between the parties. *Id.*

Silgan counters that all policies contain essentially the same terms covering essentially the same risk. *Id.* at 2. In support of its argument that all files are relevant to construing contract terms and risks, it cites documents already produced from the underwriting files that reference previous underwriting files and agreements. *Id.*

The court's previous order ordered disclosure of the underwriting file. National Union did not argue burden then or ask to limit the years of disclosure. Given that the files all relate to policies issued to Silgan for similar risks, and the policies have similar terms, the policies appear relevant for the reasons articulated in the court's December order. Silgan also points to documents from the disclosed files cross-referencing dates back to 1998. *Id.* at 3. On this record, the court is not prepared to limit the years. Also, disclosure of files relating only to Silgan does not seem particularly burdensome. National Union is really concerned about a protective order because of other litigation with Silgan, but the parties submitted a stipulated protective order on March 14, 2011, *see* ECF No. 88, and the court issues that order with this order.

National Union is ordered to produce the underwriting files.

Silgan also asked for its attorney's fees. The court denies that request. The bottom line here is that the parties continue to argue about discovery issues that they ought to work out themselves. On balance, National Union appears more unreasonable, but neither party is without fault. Also, it is not outside the ballpark to ask to limit the years of production (even though National Union should have raised it in the earlier discovery letter). Finally, asking for a protective order is not unreasonable.

**B. Production of Privileged Documents from Underwriting Files**

The parties also argue about whether National Union may withhold documents from the underwriting files as privileged or confidential. *See* 2/25/11 Joint Letter, ECF No. 82 at 7-12. Boiled down, Silgan's position is that the garden-variety business documents in underwriting files are not protected work product or privileged. *Id.* at 7-10 (analyzing cases). Also, Silgan rejects

UNITED STATES DISTRICT COURT
For the Northern District of California

1   National Union's position that it is entitled to redact information about claims other than the tomato

2   claims that are the subject of this lawsuit. *Id.* at 9-10.  The reason, Silgan argues, is that this court

3   already ruled that the underwriting files (involving essentially the same contract terms and risks) are

4   relevant. *Id.* National Union responds – but without any case-specific examples – that information

5   can be privileged and protected from disclosure. *Id.* It also is concerned about use in other litigation

6   between the parties. *Id.*

7        The bottom line with this dispute is that it is not this court's intent that National Union withhold

8   information about non-tomato claims, particularly given its failure to raise the issue before and the

9   essentially similar contract terms and risks (and the relevancy to the risks covered in the applicable

10  policies, how National Union interpreted the policy terms, and whether the terms were ambiguous).

11  The court already ruled this way in December, and it reiterated that ruling in the previous section.

12  Moreover, for the reasons discussed by Silgan in the joint letter, the court agrees that material in

13  underwriting files is not likely to be protected work product or privileged.  National Union's concern

14  about use in other litigation is fair, but the protective order takes care of the concern.  Beyond that,

15  the court is not going to guess at potential work product and privilege claims or give some kind of

16  advisory opinion.  If the parties have a dispute, they need to raise it in accordance with the

17  procedures for privilege logs in this court's standing order:

18      If a party withholds material as privileged, *see* Fed. R. Civ. P. 26(b)(5) and 45(d)(2)(A), it must
19  produce a privilege log as quickly as possible, but no later than fourteen days after its disclosures
    or discovery responses are due, unless the parties stipulate to or the Court sets another date.
20  Privilege logs must contain the following: (a) the subject matter or general nature of the
    document (without disclosing its contents); (b) the identity and position of its author; (c) the date
    it was communicated; (d) the identity and position of all addressees and recipients of the
21  communication; (e) the document's present location; (f) the specific privilege and a brief
    summary of any supporting facts; and (g) the steps taken to ensure the confidentiality of the
22  communication, including an affirmation that no unauthorized persons received the
    communication.
23

24  The idea here is that in the unlikely event that National Union has some real claim of work product

25  or privilege, it must produce a proper privilege log so that Silgan can evaluate the claim fairly.  If

26  both parties play by the discovery rules, and justify any information withheld, there often is no need

27  to involve the court.  And if there is, the court's review goes much faster than the 180 pages in this

28  current dispute allowed.  Accordingly, both parties are directed to comply with this court's standing

UNITED STATES DISTRICT COURT
For the Northern District of California

1  order regarding claims of privilege and thereafter submit any disputes (and there really should not be

2  any in this area) to the court by the joint letter process.

3  **C. Disclosures Regarding Expert Kenneth Neumann and RGL Forensics**

4      On January 6, 2011, Silgan requested information about National Union's expert, Kenneth

5  Neumann, and his firm, RGL Forensics.  2/25/11 Joint Letter, ECF No. 82-10 at 2-3, Exh. J.  On

6  February 2, 2011, National Union responded to the requests.  *Id.* at ECF No. 82-11, Exh. K.  The

7  requests and responses are as follows:

8      RFP1:    His retainer agreement with your firm or AIG/National Union in this case.

9      REPLY:    National Union objects to this Request to the extent it seeks information or
documents broader than those permitted by Rule 26(b)(2)(B) and 26(b)(4)(C).

10                National Union further objects to the extent this Request is directed to "AIG" because
"AIG" is not a party to this litigation. National Union further objects that this request

11                seeks documents or information protected from disclosure by Federal Rule of Civil
Procedure 26 and by the attorney client privilege and work product immunities.

12                Subject to and without waiving these objections or the General Objections set forth
above, National Union states that no written retainer agreement exists with Mr.

13                Neuman for this case. Mr. Neuman's rate, as set forth in his expert report, is $240 per
hour.

14

15      RFP2:    Any retainer agreements he and/or his firm has had with your firm or AIG/National
Union in prior cases over the past ten years**.**

16      REPLY:    National Union objects to this Request to the extent it seeks information or
documents broader than those permitted by Rule 26(b)(2)(B) and 26(b)(4)(C).

17                National Union further objects to the extent this Request is directed to "AIG" because
"AIG" is not a party to this litigation. National Union further objects to this Request

18                because it seeks documents, communications, and information protected by the
attorney-client privilege, work product immunity, joint defense agreements in other

19                unrelated litigation, or confidential, trade secret and proprietary information, and
because this Request seeks information that is not reasonably calculated to lead to the

20                discovery of admissible evidence. Subject to and without waiving these objections or
the General Objections set forth above, National Union states that it is not obligated

21                to create a document summarizing the requested information; and compiling such
documents would be unduly burdensome, oppressive, and not reasonably limited in

22                scope or time.

23      RFP3:    His statements to your firm or National Union for the work he has done on this case.

24      REPLY:    National Union objects to this Request to the extent it seeks information or
documents broader than permitted by Rule 26(b). National Union further objects to

25                this Request because it seeks statements that are beyond the scope of expert discovery
and necessarily contain privileged communications between National Union and Mr.

26                Neuman, which are protected by Rule 26(b)(4)(C), as well as documents or
information protected from disclosure by the attorney client privilege and work

27                product immunities. Subject to and without waiving these objections or the General
Objections set forth above, National Union agrees to produce "a statement of the

28                compensation to be paid for the study and testimony in the case" prior to Mr.

1      Neuman's deposition.

2      RFP4:    Documents sufficient to show (1) the percentage of his gross income earned for each
               of the preceding five years attributable to performing consulting or expert witness
3              services on behalf of AIG, National Union, or other insurance companies, and/or
               attorneys defending AIG, National Union or other insurance companies; (2) a list of
4              cases in which he or RGL has provided such services during the last five years, in
               sufficient detail to enable us to locate the court file, and/or issue a subpoena for it; (3)
5              the name of each insurance company for which he or RGL has provided services as a
               consultant or expert witness for the preceding ten years. *See Behler v. Hanlon*, 199
6              F.R.D. 553, 562 (D. Md. 2001).

7      REPLY:   National Union objects to this Request to the extent it seeks information or
               documents broader than permitted by Rule 26(b). National Union further objects to
8              this Request on the grounds that National Union is not in the possession or control of
               such documents; National Union nor Mr. Neuman are obligated to create a document
9              sumarizing such information; and compiling such documents would be unduly
               burdensome, oppressive, and not reasonably limited in time or scope. Further,
10             National Union objects to this Request because it seeks documents that are privileged
               and confidential information; and documents to which National Union is not privy
11             and does not have possession, custody or control. National Union further objects to
               this Request because it seeks information that is proprietary, as well as documents
12             subject to joint defense agreements, confidentiality or protective orders in other
               litigation, or information relating to other claims or litigation that is protected from
13             disclosure by Rule 26(b)(4)(D). National Union further objects that this request seeks
               documents or information protected from disclosure by the attorney client privilege
14             and work product immunities. National Union further objects that the Request is
               overly broad, unduly burdensome, oppressive, and not reasonably limited in time or
15             scope, seeks documents that are not relevant or reasonably calculated to lead to the
               discovery of admissible evidence, and imposes upon National Union a burden and
16             expense in responding that outweighs any likely benefit to Silgan.

17             Subject to and without waiving these objections or the General Objections set forth
               above, National Union has already produced a list of cases in which Mr. Neuman has
18             testified as an expert over the last four years as required by Rule 26(b)(2)(B)(v).

19     2/25/11 Joint Letter, ECF No. 82-10 at 2-3, Exh. J; ECF No. 82-11 at 2-7, Exh. K.  National Union

20     also lodged additional boilerplate objections.  *Id.* at 2-3, Exh. K.  Silgan agreed to modify the fourth

21     request to cover only expert witness services, not consulting services.  ECF No. 82 at 15.

22         Silgan generally contends that these requests for documents are relevant to show bias and

23     prejudice, and courts routinely grant similar requests.  ECF No. 82 at 13-16.  National Union

24     responds that under Rule 34, it is not required to produce documents that it does not have in its

25     possession or control or create documents that do not exist.  ECF No. 82 at 16-17 (asserting that it

26     does not have documents relating to "every instance in which [Mr. Neumann or RGL Forensics]

27     have been retained as a testifying or non-testifying [*sic*] on behalf of National Union, or any

28     insurance company, for the last ten years").  Also, if Silgan wants broader disclosures from Mr.

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1 | Neumann or RGL Forensics, it should have served them with subpoenas. *Id.* Finally, National

2 | Union argues that production is burdensome, *id.* at 17-19, Silgan has failed to show Mr. Neuman is

3 | biased, *id.* at 19, and any information should be produced pursuant to a protective order. *Id.* at 20

4 | n.4.

5 | The court will address each request in turn.

6 | *a. Mr. Neumann's Retainer in This Case*

7 | To the extent that National Union has a retainer agreement or additional information with respect

8 | to any compensation given from National Union to Mr. Neumann in this case, it must produce it.

9 | *See* Fed. R. Civ. P. 26(a)(2)(B)(vi) (requiring production of "a statement of the compensation to be

10 | paid for the study and testimony in the case."). National Union contends that it does not have a

11 | retainer agreement with Mr. Neumann but that it is paying him $240 per hour in this case. 2/25/11

12 | Joint Letter, ECF No. 82 at 17. Rule 26(a)(2)(B)(vi) does not mandate only National Union's

13 | disclosure of Mr. Neumann's hourly rate. Instead, it requires National Union to produce any

14 | information regarding "compensation." Fed. R. Civ. P. 26(a)(2)(B)(vi); *see also Cary Oil Co., Inc.*

15 | *v. MG Refining & Marketing, Inc.*, 257 F. Supp. 2d 751, 756-57 (S.D.N.Y. 2003). National Union

16 | must produce all information it has regarding Mr. Neumann's compensation in this case. (Given

17 | National Union's reply to the third request for production, *see supra* p. 5, it may have already

18 | provided this information).

19 | *b. Mr. Neumann and RGL Forensics' Retainers in Other Cases*

20 | Silgan asks for retainers with National Union, Chartis, and AIG for the past 10 years. ECF No.

21 | 82-10 at 2, Exh. J.

22 | The first issue is, what entities are implicated by this request. Silgan argues that National Union

23 | must disclose all information in the possession of National Union, Chartis, and AIG because they are

24 | the same entity. *Id.* at 14. National Union apparently does not dispute that to the extent that they are

25 | the same companies, information from the companies is implicated by the requests for production.

26 | This conclusion is illustrated by the joint letter, which does not raise a "separate entity" argument as

27 | to Chartis, and Chartis claims administrator Jennifer Sigman's declaration about the costs Chartis

28 | would incur responding to Silgan's requests. *See* ECF No 82-15, Exh. O. AIG, on the other hand, is

UNITED STATES DISTRICT COURT
For the Northern District of California

1   the parent company.  That relationship (at least based on this record) is too attenuated for the court

2   to order document disclosure from AIG.  The record does show that Chartis (the claims

3   administrator) is the entity previously known as AIG Domestic Claims.  Joint Letter, ECF No. 82 at

4   14.  Based on this, the court's order extends to National Union and to Chartis.  *See* Jennifer Sigman

5   Declaration, ECF No. 82-15 at 2, ¶ 1, Exh. O (Chartis, as the claims administrator, is responsible for

6   coordinating the litigation, including discovery responses, on behalf of National Union).

7       The second issue is whether National Union/Chartis should produce retainer agreements about

8   Mr. Neumann for the past ten years.  Silgan contends that these requests correspond to what courts

9   routinely grant in similar situations.  ECF No. 82 at 13-16.  National Union objects that the request

10  is burdensome.  *See* Declaration of Jennifer Sigman, ECF No. 82-15 at 2.

11      The information Silgan seeks about National Union's past and present relationship with Mr.

12  Neumann is the type of discovery that courts grant routinely because it is relevant to bias or

13  prejudice.  *See Behler v. Hanlon*, 199 F.R.D. 553, 561 (D. Md. 2001); Fed. R. Civ. P. 26.  Contrary

14  to National Union's assertion, Silgan need not identify a particular instance that supports its

15  contention of bias before it is entitled to this sort of information.  *See, e.g., Behler*, 199 F.R.D. at

16  561; *Cary Oil Co.*, 257 F. Supp. 2d at 756-57.  Like the court in *Behler*, the court limits the time

17  period to five years.

18      On this record, however, the court cannot conclude that producing similar information about

19  RGL is worth the substantial burden and expense identified by National Union.  *See* Fed. R. Civ. P.

20  26(b)(2)(C)(iii); Sigman Declaration, ECF No. 82-15 at 4-5, ¶¶ 7-14, Exh. O.  Therefore, Silgan's

21  request for retainer agreements between RGL and National Union in other cases is denied.

22          *c.  Mr. Neumann's Billing Statements For the Work Done In This Case*

23      These statements are relevant and discoverable.  Fed. R. Civ. P. 26(a)(2)(B) (the pre-December

24  1, 2010 Rule).  National Union says that it has already produced the statements.  ECF No. 82 at 18.

25  This is the same information discussed in category (a) on page 7.  If there is more to produce,

26  National Union should produce it.

27  ///

28  ///

1    *d.  Percentage of Income Mr. Neumann Earned in Past Five Years From Insurance*

2    *Companies*

3    Information about the percent of Mr. Neumann's gross income from the past five years that he

4    earned from expert witness services on behalf of insurance companies is relevant to bias or prejudice

5    and therefore, discoverable under Rule 26.  *See Behler*, 199 F.R.D. at 562 (granting this discovery

6    for this same five-year time period).  Silgan requested these documents, however, from National

7    Union, not Mr. Neumann.  2/25/11 Joint Letter, ECF No. 82-10 at 2-3.  Pursuant to Rule 34, a party

8    is not required to produce documents that are not in its possession, custody, or control.  Fed. R. Civ.

9    P. 34(a)(1).  If National Union has this information, it should produce it.  If not, the court strongly

10    suggests that National Union obtain this information from Mr. Neuman and produce it.  This

11    information is readily available to Mr. Neumann, and it is relevant and discoverable.  National

12    Union also has a stake in getting the information and producing it in an orderly, accessible fashion.

13    The alternative is that Silgan can serve a subpoena for the same information under Federal Rule of

14    Civil Procedure Rule 45.  *See Behler*, 199 F.R.D. at 562 (granting this type of discovery after the

15    plaintiff served an insurance company's expert with a subpoena).

16    *e.  List of Cases From the Past Five Years From Mr. Neumann and RGL*

17    Information regarding the cases in which Mr. Neumann has provided expert witness services

18    over the past five years is relevant to proving bias or prejudice and is therefore discoverable.  *See*

19    Fed. R. Civ. P. 26(a)(2)(B)(v); *Behler*, 199 F.R.D. at 562 (granting this discovery).  Though Rule 26

20    only requires National Union to produce information corresponding to cases in which Mr. Neumann

21    testified at trial or by deposition in the past four years, it does not foreclose additional discovery if

22    the information sought is relevant and discoverable.  Advisory Comm. Notes on 1993 Amendments

23    to Fed. R. Civ. P. 26 (Rule 26 does not limit parties from using traditional discovery methods to

24    obtain information about "testimony given in other litigation beyond the four-year period specified

25    in Rule 26(a)(2)(B)").  Again, contrary to National Union's contention, Silgan does not have to

26    show an additional basis – beyond relevance – for gaining more information than Rule 26 requires.

27    *See Moses v. Halstead*, 236 F.R.D. 667, 677 (D.Kan. 2006) ("requests for documents are not

28    objectionable merely because they seek documents outside the scope of the expert disclosures

UNITED STATES DISTRICT COURT
For the Northern District of California

1    required by Rule 26(a)(2)(B)").  Finally, nothing in the record suggests that Mr. Neumann cannot

2    provide this information, and National Union has a stake at being involved in the disclosure process.

3    In sum, given the relevance and the time frames at issue in this case, the court orders disclosure for

4    the five-year period.

5        But on this record, and for the reasons previously articulated, the court cannot assume that Mr.

6    Neumann's potential bias is co-extensive with his affiliation with RGL.  Therefore, National Union

7    does not have to produce a list of cases in which RGL has provided expert witness services.

8        *f. Names of Insurance Companies for whom Mr. Nuemann and RGL Have Provided Expert*

9    *Witness Services Over the Past 10 Years*

10       For the reasons stated in the previous sections, the information is relevant to Mr. Neumann's bias

11   or prejudice, and it is discoverable.  *See Behler*, 199 F.R.D. at 562 (granting this type of discovery

12   for 10 years prior to the litigation).  National Union cites *Sullivan v. Metro N. R.R. Co.*, No.

13   3:05cv6655 (AHN), 2007 U.S. Dist. LEXIS 88938, at *2 (D.Conn. Nov. 30, 2007) in support of its

14   argument that the request is "overkill," *see* 2/25/11 Joint Letter, ECF No. 82 at 19-20, but that court

15   permitted deposition testimony about these precise categories of information.  *See Sullivan*, 2007

16   U.S. Dist. LEXIS at *8-*9 (plaintiff sought information for five years).  The court limits the

17   information to the past five years.  That is reasonable given the facts of this case.  The court

18   observes (to Silgan) that at some point, that kind of impeachment evidence has attenuated relevance

19   to the trier of fact.

20       For the reasons stated in the prior sections, and based on this record, the information is limited to

21   Mr. Neumann and does not extend to RGL.

22       *g. Protective Order*

23       The parties filed a stipulated protective order on March 14, 2011, *see* ECF No. 88, and this court

24   simultaneously grants it with this order.  This disposes of National Union's request in the letter brief

25   for a protective order.

26   **D. Silgan's Notice and Amended Notices of Non-Retained Expert Testimony**

27       National Union argues the court should strike expert disclosures that Siglan made on January 10

28   2011, 48 days after the district court's November 23, 2010 deadlines.  2/25/11 Joint Letter, ECF No.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   82 at 21.  It also contends that until the February 18, 2011 amended disclosures, the disclosures were

2   insufficient because they did not identify the "specific subject matter or the specific facts and

3   opinions" of the expert testimony.  *Id.*  The February 18 disclosures defined the expert testimony by

4   referencing excerpts of their depositions, and National Union accepts those quotations but asserts

5   that it is entitled to depose the witnesses if Silgan intends the "broad list of subject matter, facts, and

6   opinions listed at the beginning of its February 18th Amended Disclosures" to broaden the expert

7   testimony beyond the deposition excerpts.  *Id.* at 23.

8      Silgan responds that the witnesses are rebuttal witnesses, that are not subject to any deadline in

9   the district court's case management order.  *Id.* at 24.  Also, Silgan served its disclosures only after

10  receiving National Union's expert disclosures on December 21, 2010.  *Id.*  While Silgan did not

11  specify that the witnesses were rebuttal experts only (or call the report a Rule 26(a)(2)(C) report),

12  that information is evident from the content of its disclosures that the witnesses would rebut

13  testimony from National Union's expert, Peter Cocotas.  *Id.*  Similarly, on January 12, 2011, Silgan

14  gave National Union its formal expert rebuttal report for Jay Unverferth, who will also rebut Mr.

15  Cocotas' testimony.  *Id.*  Also, generally these are fact witnesses, and Silgan says that it designated

16  the witnesses as expert witnesses out of an "abundance of caution" and "to make sure that National

17  Union could not later claim any surprise at their testimony – whether viewed as 'fact' or 'expert'."

18  *Id.* at 25.  Finally, Silgan argues that the disclosures have enough detail, no further depositions are

19  needed, and it should be awarded fees for another frivolous request.  *Id.* at 25-26.

20      The court addresses the timeliness of the disclosures and the adequacy of the disclosures

21  separately.

22        *a. Timeliness of Disclosures*

23      The witnesses probably are fact witnesses and at most are rebuttal expert witnesses.  The district

24  court's order is silent on timing of rebuttal disclosures, which means that the Federal Rules govern.

25  Rebuttal disclosures are due 30 days after the other party's disclosures.  Fed. R. Civ. P.

26  26(a)(2)(D)(ii).  The amended disclosures, which defined the expert testimony in terms of previous

27  deposition testimony, were an appropriate response to National Union's argument about the

28  sufficiency of the disclosures.  *See also* Fed. R. Civ. P. 26(e)(1)(A) (requiring a party to supplement

1    disclosures in a timely manner if the original disclosure is "incomplete or incorrect, and if the

2    additional or corrective information has not otherwise been made known to the other parties during

3    the discovery process or in writing"). Here, Silgan really is compensating for National Union's

4    scorched earth attacks on all of its disclosures. The witnesses had been deposed, they generally are

5    fact witnesses, and to the extent that their testimony rebuts National Union expert Peter Cocotas's

6    testimony, Silgan called it out by referencing the portions of their deposition testimony. Silgan also

7    is offering "expert" testimony that is the same testimony by the witnesses at their depositions.

8    2/25/11 Joint Letter, ECF No. 82 at 23. The court sees only disclosure to National Union at the

9    depositions, overcompensation by Silgan during a time period consistent with rebuttal expert

10   testimony, and absolutely no prejudice to National Union.

11              *b. Substance of the Disclosures*

12       Silgan's rebuttal disclosures satisfy the requirements of Rule 26(a)(2)(C). That rule provides

13   that if a witness is not required to provide a written report, the disclosure should identify (1) the

14   witness that the party may call to testify, (2) the subject matter on which the witness is expected to

15   testify, and (3) a summary of the facts and opinions to which the witness is expected to testify. Fed.

16   R. Civ. P. 26(a)(2)(C). National Union accepts that the block quotations on pages 3-34 of Silgan's

17   February 18, 2011 disclosure satisfy Silgan's obligation to provide a summary of the facts and

18   opinions to which the witnesses will testify. 2/25/11 Joint Letter, ECF No. 82 at 23 and ECF No.

19   82-18 at 4-35, Exh. R. Thus, the court need consider only whether Silgan's disclosures sufficiently

20   identify the subject matter on which the witnesses are expected to testify. In its February 18, 2011

21   disclosure, Silgan identifies the following four subject matters:

22       1. The cause of the corrosion in the defective tomato cans.
         2. The adulteration of the products and the threat to the health of consumers.
23       3. Whether, from a commercial standpoint, Del Monte could risk selling defective tomato
            products to the public and whether they were commercially saleable.
24       4. The chemical reaction between the cans and tomato product and the effect on the shelf life of
            the products.

25

26   ECF No. 82-18 at 2, Exh. R. The February 18, 2011 disclosure also contains a brief summary of the

27   facts and opinions about which Silgan expects the witnesses to testify and 31 pages of deposition

28   excerpts corresponding to each witness. *Id.* at 3-35. The court finds that Silgan sufficiently

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    articulated the subject matter upon which the witnesses will testify.  Accordingly, National Union's

2    motion to strike Silgan's disclosures as inadequate and untimely is denied.

3        *c. Depositions*

4        National Union now wants to depose the witnesses, who already were deposed, because they did

5    not investigate the basis of potential opinion testimony, and in any event, for four witnesses it

6    deposed under Rule 30(b)(6), those witnesses provided information on behalf of the corporation, not

7    as individuals.  ECF No. 82 at 26-27.  Silgan counters that the witnesses will testify only about

8    matters in their depositions.  *Id.* at 28-29.  The court denies further depositions.  The burden and

9    expense of further depositions outweighs their utility (particularly given that the court can ascertain

10   no benefit).  The bottom line here is that Silgan will only offer testimony consistent with that in the

11   depositions that already were taken.

12       *d. Attorney's Fees*

13       The whole point of the joint letter process is to avoid motions.  That saves fees.  Silgan's

14   disclosures – while a reaction to National Union's tactics – probably should have been in the form of

15   the amended February disclosures from the get-go.  For that reason, the court denies fees and costs.

16                              **III.  FUTURE DISCOVERY DISPUTES**

17       The court's process is designed to allow side-by-side evaluation of issues, and this joint letter

18   brief is better than the last two.  But the parties' antipathy toward each other means that their

19   arguments are not always point by point, and that impedes this court's review.  For example, a

20   request-by-request analysis of the document productions in the joint letter would have allowed a

21   faster review of the arguments.  As it is, the letter brief had a quality of "don't have to" and "do

22   too," and the court had to search for the arguments amidst the venom.  That kind of relationship

23   between parties drives up client costs, and it slows down discovery review.

24       In part, this may be because the court – in an attempt to minimize costs for clients – has allowed

25   the parties to confer by telephone rather than meet in person (as the court's standing order requires).

26   Similarly, the court has allowed telephonic discovery hearings (a process that only confirms to the

27   court that the parties are not collaborating at all on discovery obligations that are laid out in the

28   rules).

C 09-05971 RS (LB)
ORDER RE 2/25/11 DISCOVERY LETTER

1   Going forward, it is clear to the court that conferring by telephone to resolve disputes is not

2   working, and that in turn does not give the court solace that the parties are meeting and conferring in

3   good faith.  Going forward, the parties must make a contemporaneous record of their meeting using

4   a court reporter or a digital recording (with a tape recorder or the equivalent).  The purpose of this is

5   to give the court the ability – if necessary – to review the sufficiency of the telephonic meet-and-

6   confer.  If the parties elect to use a recording instead of a court reporter, and if the court determines

7   that a review of the recording is appropriate, the parties must provide a transcript of the recording to

8   the court with the recording itself.  (At least initially, an in-house transcript of the recording – as

9   opposed to one prepared by a court reporter – will be sufficient, but the court may ask for a formal

10  transcript.)

11      If that process does not enable the parties to resolve their dispute, the parties must participate in

12  a telephone conference with the court before filing the letter brief contemplated by this court's

13  standing order.  To request a telephone hearing, the parties must file a joint letter not to exceed four

14  pages (with no attachments) that briefly explains the nature of the dispute.   The court will contact

15  the parties to schedule the conference.

16      **IT IS SO ORDERED.**

17  Dated: March 23, 2011

18  _____
    LAUREL BEELER
    United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

C 09-05971 RS (LB)
ORDER RE 2/25/11 DISCOVERY LETTER

14