**\*\*E-filed 10/3/11 \*\***

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SILGAN CONTAINERS, LLC,

          Plaintiff,

   v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, P.A, et al.,

          Defendants.

_____/

No. C 09-5971 RS

**ORDER GRANTING SUMMARY
JUDGMENT FOR DEFENDANT
NATIONAL UNION AND
RESOLVING ALL OTHER PENDING
MOTIONS**

## I.  INTRODUCTION

Silgan Containers, LLC ("Silgan"), plaintiff in this insurance coverage dispute, manufactures cans for commercial producers of canned food goods.  In 2005 and 2006, Silgan's customer Del Monte became concerned that an abnormally high number of Silgan's cans packed with tomato products were experiencing premature failure.  After an investigation discovered a possible defect in the cans' lining, Del Monte destroyed its remaining inventory and presented a multimillion dollar claim to Silgan, which then tendered to its primary liability insurer, Liberty Mutual Fire Insurance Company ("Liberty Mutual").  Liberty Mutual paid its policy limits of $1.5 million, less a $250,000 deductible.  Silgan's excess insurer, defendant National Union Fire Insurance Company of Pittsburgh, P.A. ("National Union") declined to cover Silgan's remaining liability to Del Monte of approximately $4 million.

United States District Court
For the Northern District of California

1       Silgan initiated this action against National Union, which has cross-claimed against Liberty,

2 arguing that Del Monte's claim should have been treated as more that one "occurrence," such that

3 Liberty Mutual would have additional exposure.  Silgan has also amended its complaint to include

4 Liberty Mutual as a defendant, although it continues to allege that Liberty Mutual has fulfilled all its

5 contractual obligations.  By cross-motions, the parties now each seek summary judgment in whole

6 or in part.  Because Silgan cannot show that Del Monte's claims against it arose from "property

7 damage" within the meaning of the National Union policy, summary judgment will be granted to

8 National Union, thereby also effectively rendering the claims against Liberty Mutual moot.

9

10                      II.  BACKGROUND

11       Del Monte produces, distributes, and markets tomato products, which it packs in cans each

12 summer between July and October.  Silgan manufactured and supplied the cans into which Del

13 Monte packed its tomato products in 2005 and 2006 ("the 2005 Pack and 2006 Pack").  All such

14 cans were manufactured under the same process at Silgan's facility using specifications provided by

15 Del Monte.

16       In August of 2006, in the middle of that year's packing season, Del Monte reported problems

17 with the cans used in the 2005 Pack, including swelling, corrosion, loss of vacuum, pitting, and

18 resulting discoloration and metallic taste of the product.  In April of 2007, Del Monte informed

19 Silgan it was experiencing the same problems with the 2006 Pack.

20       Silgan and Del Monte conducted a joint investigation into the cause of the problems.  While

21 the investigation never uncovered the underlying cause of the cans' defect, the source of the

22 symptoms was determined to be defective interior coating, which resulted in a chemical reaction

23 between the tomato products and the cans.

24       The problems with the cans were progressive, in that the failure rate increased over time

25 from when the tomato products were packed.  Given the truncated can shelf life and escalating

26 failure rate, Del Monte ultimately elected to destroy its remaining inventory of the 2005 and 2006

27 Packs.  It then claimed damages from Silgan for the 2005 Pack in the amount of $758,470 and for

28 the 2006 Pack in the amount of $4,721,625.  Del Monte recovered these sums from Silgan by

1    withholding payments on outstanding Silgan invoices for a total of $5,480,094.  Silgan, in turn

2    sought indemnity from its insurers for this amount, together with $311,897 for sums it expended on

3    Del Monte's behalf.

4         In its amended complaint in this action, Silgan asserts that the underlying Del Monte claim

5    arose out of a single "occurrence" and that Liberty Mutual has paid its per-occurrence limit.  As a

6    result, Silgan seeks only declaratory relief with respect to Liberty Mutual, in the event National

7    Union prevails in its contention that Silgan did not exhaust its underlying coverage.  Silgan seeks to

8    recover the balance of its claim from National Union, and damages for alleged bad faith.

9

10                             III.  LEGAL STANDARD

11        Summary judgment is proper "if the pleadings and admissions on file, together with the

12   affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

13   party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The purpose of summary

14   judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*,

15   477 U.S. 317, 323-24 (1986).  The moving party "always bears the initial responsibility of

16   informing the district court of the basis for its motion, and identifying those portions of the

17   pleadings and admissions on file, together with the affidavits, if any, which it believes demonstrate

18   the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotation marks

19   omitted).  If it meets this burden, the moving party is then entitled to judgment as a matter of law

20   when the non-moving party fails to make a sufficient showing on an essential element of the case

21   with respect to which he bears the burden of proof at trial. *Id.* at 322-23.

22        The non-moving party "must set forth specific facts showing that there is a genuine issue for

23   trial." Fed. R. Civ. P. 56(e).  The non-moving party cannot defeat the moving party's properly

24   supported motion for summary judgment simply by alleging some factual dispute between the

25   parties.  To preclude the entry of summary judgment, the non-moving party must bring forth

26   material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . .

27   Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby,*

28   *Inc.*, 477 U.S. 242, 247-48 (1986).  The opposing party "must do more than simply show that there

**United States District Court**
For the Northern District of California

3

is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (*citing Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. In these cross-motions, the parties are largely in agreement that no material disputes of fact exist regarding the threshold issues of whether there is coverage at all under the National Union policy, and whether Liberty Mutual correctly treated the claim as one occurrence. The dispute, therefore, is primarily as to proper application of the law to the facts.[1]

## IV. DISCUSSION

A. National Union's Motion for Summary Judgment and Silgan's Cross-motion

As Silgan acknowledges, "[t]he burden is on the insured to establish that the claim is within the basic scope of coverage." *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 648 (2003). In the policies it issued to Silgan, National Union undertook to "pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law . . . because of . . . Property Damage . . . that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world." There is no

---

[1] The parties are in agreement that California law applies to the insurance contracts in dispute.

*United States District Court*
For the Northern District of California

1  dispute that the failure of the Silgan cans would satisfy the policy definition of "Occurrence"; the

2  question is whether there was "Property Damage."   The policies define that term two ways:

3  (1) "Physical injury to tangible property, including all resulting loss of use of that property. All such

4  loss of use shall be deemed to occur at the time of the physical injury that caused it; or (2) Loss of

5  use of tangible property that is not physically injured. All such loss shall be deemed to occur at the

6  time of the 'occurrence' that caused it."  Silgan contends it is entitled to coverage under either

7  prong.[2]

8         *1.  Physical Injury to Tangible Property*

9         As an initial matter, Silgan does not and could not contend that the apparent defects in its

10  cans constitute the requisite "physical injury to tangible property."  Silgan acknowledges that

11  Exclusion F of the policies excludes from coverage "Property Damage to Your Product arising out

12  of it or any part of it."   Silgan instead argues, as it must, that the defective cans caused physical

13  injury to the Del Monte tomato products placed in the cans.  Silgan relies on evidence that *when the*

14  *cans failed*, the contents would undergo chemical changes, resulting in an unusual "metallic" taste, a

15  strange odor, a "foamy consistency," and increased iron content.  As a consequence, Silgan asserts,

16  this case is distinguishable from another action involving it, Del Monte, and National Union, where

17  defects in the "pull tab" opening devices on Silgan cans could not be said to have had *any* physical

18  effect on the Del Monte fruit packed in those containers.  *See Silgan Containers Corp. v. Nat'l*

19  *Union Fire Ins. Co. of Pittsburgh, Pa.*, 2010 WL 1267127 (N.D. Cal.) ("*Silgan I*") (granting

20  summary judgment in favor of National Union on grounds that no "property damage" existed to

21  trigger coverage).

22         The flaw in Silgan's position, however, is the absence of any evidence that the large

23  numbers of cans discarded by Del Monte had in fact already failed. Indeed, Silgan forthrightly

24

25  [2]   National Union faults Silgan for simultaneously seeking coverage under both definitions,
   pointing out that they are necessarily mutually exclusive because the "loss of use" prong applies
26  only where there is no physical injury to tangible property.  Although Silgan's argument conflates
   the two definitions to some degree, its intent appears to be to argue in the *alternative*—i.e., that
27  either there was physical injury to the tomato products sufficient to trigger coverage, or, if not, then
   there was loss of use within the meaning of the policies.
28

United States District Court

For the Northern District of California

1    admits that the cans were pulled from distribution because of a "risk" that they *would* develop

2    problems.  In fact, a Del Monte witness testified that disposal of its remaining inventory was

3    necessary from its point of view because it could not "dud detect or systematically cull out the bad

4    product."  While there is evidence of a "severe" risk that virtually all of the cans would eventually

5    fail prior to the expiration of their normal shelf life, or at a minimum, that an unacceptably high

6    percentage of them likely would do so, Silgan has not even tried to show that the physical changes

7    to the tomato product on which it relies had already taken place in any significant portion of the cans

8    that were destroyed.[3]

9         That Silgan is attempting to rely on potential *future* physical damage to the tomato product is

10   further confirmed by its reliance on *Eljer Manufacturing, Inc. v. Liberty Mut. Ins. Co.,* 972 F. 2d

11   805 (7th Cir. 1992).  In *Eljer*, the majority concluded, over a vigorous dissent, that where defective

12   plumbing systems with a potential to leak and cause damage in the future had been installed in more

13   than a half million homes, the physical injury to tangible property should been seen as having taken

14   place at the time of installation, even though no leaking or damage to the residences had yet

15   occurred.  *See id.* at 814.  *Eljer* reached that conclusion based on an analysis of how the language in

16   form comprehensive general liability policies evolved, and the intended purposes of such insurance.

17   *See id.* at 810-812.

18        If *Eljer* represented California law, Silgan's showing that the defects in its cans were likely

19   to cause future degradation of the tomato product might be sufficient to give rise to coverage here.

20   The California courts, however, have pointedly rejected the *Eljer* majority opinion, as have the

21   majority of other courts that have considered it.  *See F & H Construction v. ITT Hartford Ins. Co.*,

22   118 Cal.App.4th 364, 374–376 (2004) ("*Eljer* has been soundly rejected because it failed to give the

23

---

24   [3]  The possibility—or even probability—that appreciable physical damage to the tomato product
     had already occurred within at least some of the cans discarded by Del Monte does not give rise to
25   an obligation on National Union's part to provide coverage.  Del Monte's claim was not based on
     any such existing damage, but on Silgan's failure to comply with its contractual obligation to
26   provide cans conforming to shelf life and other specifications.  Even assuming Silgan would have
     had the right to pass on to its insurers the portion of that claim involving damaged tomato product, it
27   would be obliged to quantify the amount of product involved to meet its burden to establish a claim
     within the basic scope of coverage.
28

full and ordinary meaning to the policy's definitional words 'physical injury' . . . . We find the dissent in *Eljer* more persuasive; nor are we alone in that view."); *Watts Industries, Inc. v. Zurich Am. Ins. Co.,* 121 Cal.App.4th 1029, 1044 (2004) ("Courts applying standard CGL policy language generally agree that the incorporation of a defective component or product into a larger structure or system does not constitute physical injury to tangible property, unless *and until* the defective component physically injures some other tangible part of the larger system or the system as a whole." (emphasis added)).

Silgan also contends that covered property damage may be found when the insured's defective product is "integrated" with or "incorporated" into some other product. For this proposition, Silgan relies on *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal.App. 4th 847 (2000), *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.*, 45 Cal.App.4th 1 (1996), and *Watts Industries*, *supra*, 121 Cal.App.4th 1029. As explained in *Watts*, however, these decisions all turn on the fact that the insured's product was *hazardous*, thereby supporting the notion that the product as a whole became hazardous (and in that sense, damaged) at the moment of incorporation. *See* 121 Cal.App.4th at 1044-45. *Watts* further observed that only in such cases do the principles of *Eljer* have any force in California. *Id* at 1045-46. Here, there was nothing hazardous about Silgan's cans in and of themselves. Indeed, there is not even any evidence that the types of changes Silgan asserts the tomato product was likely to undergo presented any serious health hazard. Accordingly, there is no basis to find property damage merely from the fact that the cans and tomato product were "integrated" or "incorporated," particularly where, even under the most favorable view of the evidence, any danger did not arise until some point later in time.[4]

---

[4]   In support of its "integration" argument, Silgan invokes one case not involving adulteration with a contaminant posing a hazard from the outset—*Goodyear Rubber & Supply Co., Inc. v. Great Am. Ins. Co.*, 471 F. 2d 1343 (9th Cir. 1973). *Goodyear*, however, involved an older version of the standard liability policy form that did not require *physical* injury to *tangible* property. *See* 471 F. 2d at 1344. As the Ninth Circuit has explained, the policy language present in this case triggers a different analysis. *See New Hampshire Insurance Co. v. Vieira*, 930 F.2d 696, 699 (9th Cir. 1991).

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

*2. Loss of Use*

As noted, Silgan argues in the alternative that property damage exists under the prong of the definition providing coverage where there is "loss of use" without physical damage.[5]  The two cases to which Silgan points in which coverage or at least a duty to defend was found under the loss of use definition both involved defective electronic components that caused the devices into which they were installed to be inoperable.  *See Semtech Corp. v. Royal Ins. Co. of America*, 2005 WL 6192907, *5 (C.D. Cal. 2005) (defective chips installed on motherboards caused servers to shut down periodically); *Anthem Electronics, Inc. v. Pacific Employers Ins. Co.,* 302 F.3rd 1049 (9th Cir. 2002) (defective circuit boards rendered scanners inoperable).  Neither of these cases involved products that were taken off the market because they were *expected* to fail, both involved lost use arising from *actual* failures.

It may very well be that Del Monte, in a reasonable exercise of business judgment, concluded that it could not use the canned tomato products in the manner in which it had intended.  As National Union points out, however, there is no evidence that the products were wholly unusable.  To the contrary, the evidence is only that the tomato products likely were to become unusable, thereby preventing Del Monte from selling them at full price through its normal distribution channels.  The canned goods may have lost most, or even all, of their *economic* value by the time Del Monte destroyed them, but as discussed above, there is no indication that the tomato product could not be safely consumed at that point in time.

Commercial liability insurance does not protect against the risk of inferior or defective workmanship.  *F & H Construction*, 118 Cal.App. 4th at 377.  By failing to provide cans capable of meeting the contractual shelf life expectations, Silgan incurred contractual liability for the loss in economic value of the canned goods.  That does not support a conclusion, however, that there was property damage to the tomato product even under the loss of use prong of the policy definition.

---

[5]  Silgan's own motion mentions "loss of use" only in passing, and blurs the distinction between the two definitions.  While coverage under the "physical injury to tangible property" prong encompasses any resulting loss of use of the property, loss of use *without* physical injury is not a subset of that prong; it is a separate basis for finding "property damage."  Silgan's opposition to National Union's motion addresses the two prongs separately, with greater clarity.

**United States District Court**
For the Northern District of California

1    In the absence of property damage within the policy definition, the potential applicability of

2    any exclusions under the policy terms need not be evaluated.  Likewise, National Union's additional

3    contentions with respect to whether the policy limits of Silgan's primary insurers can be deemed to

4    have been exhausted and its challenges to various aspects of Del Monte's claim are all moot.

5    Having prevailed on the threshold issue of the definition of "property damage," National Union is

6    entitled to summary judgment in its favor as to all of Silgan's claims against it.  Conversely,

7    Silgan's cross motion for partial summary judgment must be denied.

8

9    B.  Liberty Mutual's Motion for Summary Judgment

10    The claims between Liberty Mutual and the other parties all sound solely in declaratory

11    relief, and arise from National Union's contention that Liberty Mutual improperly treated Del

12    Monte's claim as a single "occurrence," thereby limiting its indemnity obligation to Silgan.  As

13    between Liberty Mutual and National Union, the fact that National Union has been found not to be

14    liable to Silgan removes any basis for it to challenge Liberty Mutual's interpretation of its policy

15    obligations.

16    The granting of National Union's motion would not, standing alone, necessarily preclude

17    Silgan from contesting that Liberty Mutual fully performed its obligations under its policies.

18    Silgan's amended complaint, however, expressly alleges that Liberty Mutual has no further liability,

19    and it did not oppose Liberty Mutual's motion for summary judgment seeking such a determination.

20    Accordingly, there is no existing controversy between Silgan and Liberty Mutual and Silgan, and its

21    motion for summary judgment will be granted.

22

23    C.  Other Pending Motions

24    In conjunction with the briefing on the summary judgment motions, Silgan filed two

25    "motions *in limine*" to strike the declarations of National Union's expert witnesses, Peter Cocotas

26    and Kenneth R. Neumann.  As discussed at the hearing, to the extent these motions were based on

27    alleged failures to comply with discovery obligations, they should have been presented to the

28

United States District Court

For the Northern District of California

1   assigned magistrate judge in the first instance.  In light of the fact that summary judgment is now

2   being entered, the question of whether these witnesses should be permitted to testify at trial is moot.

3   The motion regarding Cocotas, however, also challenged the admissibility of the opinions he

4   offered, on grounds that they were not based on any special expertise or testing that would warrant

5   expert testimony.  Because Cocotas appears to have merely summarized underlying testimony and

6   evidence, this order has not relied on any opinions or conclusions he proffered, and instead is based

7   on the underlying record.

8           Silgan's administrative motion to file supplemental materials under seal (Dkt. No. 125) is

9   granted.  Although, as reflected above, the materials do not alter the analysis, National Union is not

10  prejudiced by their inclusion in the record, and sufficient cause has been shown to maintain them

11  under seal.

12          The parties' respective motions (Dkts. 137 and 145) to file additional materials related to

13  proceedings in the Ninth Circuit in the *Silgan I* matter are denied.  The Court is aware that the

14  district court's ruling was affirmed in a non-precedential memorandum disposition, that rehearing *en*

15  *banc* was denied, and that a petition for certiorari on a limited issue is pending.  None of these

16  matters impact the conclusions above.

17          National Union's motion for relief from a non-dispositive order of the magistrate judge (Dkt.

18  140) is granted on the sole ground that in light of the above disposition, no further discovery is

19  necessary or appropriate.  National Union's motion for leave to file a reply in support of that motion

20  (Dkt. 143) is denied as moot.

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

V. CONCLUSION

National Union's motion for summary judgment is granted on grounds that the undisputed facts establish the absence of any property damage within the meaning of its policies.  Liberty Mutual's motion for summary judgment is granted on grounds that there is no longer an existing controversy between it and either National Union or Silgan.  The other pending motions are resolved of as set forth above.  A separate judgment will issue.

IT IS SO ORDERED.

Dated:  10/3/11

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE